## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LAVONNE JINKS-UMSTEAD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No. 99-2691 (GK)** |
| **GORDON R. ENGLAND,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

This is an employment discrimination lawsuit brought by Lavonne Jinks-Umstead, a supervisory contract specialist, against the United States Navy.  Plaintiff alleges that she was discriminated against on the basis of her race when the Navy failed, from 1997 to 1999, to provide her with adequate staff assistance to help her perform her duties at the Carderock Division ("Carderock") of the Navy's Engineering Field Activities Chesapeake ("EFACHES").  The Navy responds that it refused to fill the open positions which would have provided staff assistance to Plaintiff because of a Department-wide reorganization process resulting from what it alleges was a reduction in the workload at the Carderock facility.

The case was originally tried to a jury in July, 2003.  After a six-day trial, the jury returned a verdict in favor of the Defendant.  Thereafter, the Court granted Plaintiff's Motion for a New Trial on Liability and Damages for two reasons:  first, Defendant failed to comply with its pre-trial discovery obligations to locate and produce certain Work In Progress ("WIP") reports which Plaintiff believed would counter Defendant's argument that there was no justification for giving her the staff support she requested; second, a number of emails relating to what Defendant characterized as a

reorganization and downsizing at EFACHES were erroneously admitted into evidence.  Subsequent to granting the motion for a new trial, the Court ordered further discovery.  Once disputes surfaced over the post-trial discovery, the Court referred all discovery matters to Magistrate Judge Facciola for resolution.

A new trial date is scheduled for January 18, 2006.  The parties have filed numerous in limine motions.  Because all of these motions focus on interrelated discovery issues -- both those pertinent to the first trial and those flowing from post-trial proceedings, the Court will deal with all of the pending Motions in this consolidated Memorandum Opinion.

Initially, it must be noted that the contentiousness of the parties in this case has not abated one whit.  They have battled in front of this Court and the jury, in front of Magistrate Judge Facciola, and now again in front of this Court.  Plaintiff's papers are repetitive, accusatory, and exaggerated.  Defendant's papers suffer from other defects -- at times they mischaracterize the rulings of Magistrate Judge Facciola or prior events in this case, and they often fail to provide an adequate substantive response to the arguments made by Plaintiff.  In sum, counsel have done little to simplify or streamline the remaining issues.

The Motions pending before the Court at this time, which consist of well over 100 pages of pleadings, are (1) Defendant's Motion to Reinstate the Jury Verdict; (2) Plaintiff's Motion in Limine to Bar Oral Testimony Not Supported By Documents and Exclude Evidence That Is Irrelevant and Confusing; (3) Plaintiff's Motion in Limine for a Jury Instruction on the Navy's Discovery Abuses and Spoliation of Evidence, or in the Alternative for Partial Summary Judgment; (4) Defendant's Motion in Limine to Exclude Argument and Preclude Instruction Regarding an Adverse Inference; and (5) Defendant's Motion in Limine to Exclude Testimony Regarding Alleged Spoliation and

Discovery Disputes.  All Motions were accompanied by related Oppositions and Replies.  Upon consideration of all Motions, Pleadings, applicable case law, and the entire record herein, the Court concludes as follows:

### I.      Defendant's Motion to Reinstate the Jury Verdict

Defendant argues that the jury verdict in its favor entered July 2, 2005, should be reinstated because, as a consequence of additional discovery which Plaintiff has received pursuant to the Court's post-trial Orders (Docket #249, 275, and 276), "it is apparent that the documents do not support Plaintiff's claim."  Defendant's Motion at p. 1.  The documents submitted as an exhibit to Defendant's Motion do not clearly demonstrate that Plaintiff's Division at Carderock was adequately staffed and that she was not, therefore, the victim of discrimination.  Moreover, the decision as to whether the documents prove what Defendant argues they prove is clearly a decision for a jury, and not this Court, to make.  Consequently, it is hereby ordered that Defendant's Motion to Reinstate the Jury Verdict is **denied**.

### II.      The Remaining Motions

The four remaining Motions are inextricably intertwined.  The Court has no intention of rehashing all the facts and history pertinent to those Motions.  The parties have done that repeatedly at enormous length.

There are basically three issues presented in the four remaining Motions.  First, whether an instruction should be given to the jury allowing it to draw an adverse inference from the discovery abuse committed by Defendant up to and during the first trial, and for the alleged discovery abuse committed by Defendant in the post-trial discovery ordered by this Court and Magistrate Judge Facciola.

Second, whether the jury should be informed about Defendant's discovery abuse prior to and during the last trial and what Plaintiff alleges to be post-trial discovery abuse.

Third, whether Defendant should be precluded from presenting oral testimony that purports to relate to documents which have not been produced by Defendant.

In sorting through the arguments presented, it is essential to differentiate between the discovery-related conduct of Defendant which occurred prior to and during the July 2003 trial, and the discovery-related conduct of Defendant which occurred subsequent to that trial. As to the former period of time, there is no question that, as this Court held in its Memorandum Opinion of February 6, 2004, a new trial was required "because of Defendant's very serious failure to comply with its discovery obligations and locate and produce the [WIP] reports to which Plaintiff was entitled." Jinks-Umstead v. England, No. 99-2691, slip op. at 3 (GK) (D.D.C. Feb. 6, 2004). As to the latter period of time, Magistrate Judge Facciola ruled in his opinion of April 7, 2005, "[o]n the record currently before the court, I see no reasonable grounds upon which this court could find that the Navy has knowingly and intentionally refused to comply with the court's June 30, 2004 [discovery] Order." Jinks-Umstead v. England, No. 99-2691, slip op. at 3, 13 (JMF) (D.D.C. April 7, 2005). Additionally, Magistrate Judge Facciola concluded that "after a painstaking review of the depositions of Holleran and Carney, the court cannot see that the defendant is stonewalling or otherwise obstructing the post-trial discovery process." Id. at 17.

In sum, although there were unquestionably discovery abuses prior to and during the July 2003 trial, it is also clear, based on Magistrate Judge Facciola's rulings, which are fully supported by the record, that there have been no such abuses since the Court granted Plaintiff's Motion for a New Trial and ordered further discovery. What is more, Defendant has been severely sanctioned for

-4-

its earlier discovery abuses.  Despite having prevailed at the July 2003 trial, Defendant has suffered

the extreme sanction of having its verdict set aside.  To put it rather colloquially, Defendant has

"paid its dues" for its earlier violations of its discovery obligations.  Finally, it must be remembered

that although this Court found that there were serious discovery violations prior to and during the

July 2003 trial, it never found, nor was there any reason to find, that Defendant's failure to comply

was either wilful, intentional, or designed to impede Plaintiff from successfully litigating her case.

This analysis of the long and convoluted discovery battle in this case provides the analytic

framework for the Court's rulings on the three issues posed in the four pending Motions.

> A.     The Court Concludes that the Facts in This Case Do Not Support the Giving
> of an Adverse Inference Instruction to the Jury Which Would Permit the Jury
> to Conclude that the Materials Withheld During the First Trial Would Have
> Supported the Plaintiff's Theory of the Case

As Judge Louis Oberdorfer of this Court held in Friends for All Children, Inc. v. Lockheed

Aircraft Corp., 587 F. Supp. 180, 208-09 (D.D.C. 1984):

> Under existing appellate precedents, to justify an adverse inference
> against [defendant], plaintiffs would have to demonstrate evil intent,
> bad faith, or wilfulness on the part of [defendant] in the destruction
> of evidence sufficient to support a reasonable inference that the
> missing evidence was detrimental to [defendant's] case.

Just as Judge Oberdorfer concluded in his case, where the facts were far more egregious than in the

present case, this Court concludes that Plaintiff has failed to carry the intent element of her burden.

There is nothing in the record to demonstrate "evil intent, bad faith, or wilfulness" on the part of the

Navy.  The Navy may have been extraordinarily sloppy in its failure to comply with its discovery

obligations, but there is not a shred of evidence to show that that failure resulted from the "evil

intent, bad faith, or wilfulness," which must be shown in order to justify the giving of an adverse inference instruction.

As to discovery problems which Plaintiff points to in the post-trial discovery process, Plaintiff's position is even weaker. Not only did Magistrate Judge Facciola conclude that Defendant had complied with all post-trial discovery orders, but he specifically found that Defendant was not "stonewalling or otherwise obstructing the post-trial discovery process." Jinks-Umstead v. England, No. 99-2691, slip op. at 17 (JMF) (D.D.C. Feb. 6, 2004). See also Thompson v. U.S. Dep't of Hous. & Urban Dev., 219 F.R.D. 93, 100-01 (D. Md. 2003) (holding that, because the granting of an adverse inference is such an "extreme sanction, three things must be shown to warrant an adverse inference instruction for spoliation of evidence:  (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.") (citations omitted).

It must be noted that there was no destruction of the WIP reports which were not produced before the first trial.  As is known by all the parties, those reports were found in the office of Jasper Garner.  Moreover, and most significantly, in post-trial discovery, Plaintiff has been given full access to the FIS database which supplies all the underlying data from which the WIP reports are prepared. While it is true that Ms. Holleran did destroy the personal notes she made as she developed the staffing levels for Carderock, those personal notes were also based on data obtained from the FIS

database.   In short, by being given access to the FIS database, Plaintiff has been given the opportunity to obtain all the relevant information which she was denied at the first trial.

As support for requesting an adverse inference instruction in this case, Plaintiff relies heavily on Reeves v. Sanderson Pluming Products, Inc., 520 U.S. 133, 146-47 (2000).  Reeves is simply inapposite to the present situation.  The Supreme Court held only that it is permissible for a jury to infer discrimination if it concludes that the Defendant's explanation for its personnel action is false or unworthy of belief.  Specifically, the Court stated that this type of proof "is simply one form of circumstantial evidence that is probative of intentional discrimination."  Id. at 147.  The Supreme Court did not alter a plaintiff's burden to offer sufficient evidence to prove pretext or discrimination. Nor did it create a presumption of pretext from the fact that there had been discovery disputes between the parties.  Indeed, there is nothing in Reeves to suggest that the Court was referring in any way to discovery issues.

Plaintiff also asks for the far more extreme sanction of shifting the burden of proof so that instead of Plaintiff having to prove the merits of her claims, as is the usual procedure, the jury would be instructed that the Navy must prove that it did not discriminate or retaliate against Plaintiff.  Such sanction, as noted, is both extremely severe and extremely rare.  Plaintiff relies on a case from a Florida Circuit Court which did grant such relief.  In Coleman Holdings, Inc. v. Morgan Stanley & Co., Inc., 2005 WL 679071, at *6 (Fla. Cir. Ct.), the trial court ruled that a "reasonable juror could conclude that evidence of [defendant's discovery] misconduct demonstrates its consciousness of guilt."  However, in that case, the magnitude of the misconduct was extraordinary.  For example, the court relied on the fact that the defendant continued to overwrite its emails for at least 12 months after it was ordered to stop that procedure; that one of the key supervisors involved in the discovery

process admitted that he gave a false certification of compliance with the court's discovery order; and that counsel delayed reporting this fact to the court for more than six months after learning of it. The court concluded in that case that the defendant was guilty of a wilful and gross abuse of its discovery obligations. These facts are totally distinguishable from the facts presented in this case.

> B.  The Court Concludes That the Facts in This Case Do Not Justify Informing the Jury About the Defendant's Discovery Abuse Prior to and During the Last Trial and What the Plaintiff Alleges to Be Post-Trial Discovery Abuse

Plaintiff has requested in its Motion in Limine for a Jury Instruction on the Navy's Discovery Abuses and Spoliation of Evidence that the jury be instructed that certain documents were in existence on April 19, 1999, that the Navy failed to produce those documents in violation of is discovery preservation obligations, and that Patricia Holleran promised that she would give the documents she used to determine staffing levels at Carderock to the EEO investigator on October 7 and 8, 1999, but never did so. For the reasons stated above, the Court declines to give such instruction to the jury. As already noted, there is no evidence that Defendant acted wilfully, intentionally, or in bad faith. Second, it would be extremely prejudicial for the Court to give such an instruction, and Defendant has already been sanctioned for its conduct. Third, the bottom line is that the case is about discrimination and retaliation. The case will not be turned into a trial about discovery.

C.     The Court Concludes That Defendant Will Not Be Precluded From
       Presenting Oral Testimony That Purports to Be Based on the Content of
       Documents Not Produced by the Navy

Plaintiff argues that the Navy should not be allowed to put on any generalized testimony regarding downsizing of the Navy, a reorganization at Carderock, or a reduction of hires in the 1102, 1105, or 1106 job series.  Plaintiff relies on Federal Rule of Evidence 1002,  better-known as the Best Evidence Rule.  That rule provides:  "to prove the contents of a writing . . . the original writing . . . is required."

Plaintiff has misunderstood the application of that Rule.  As Wright & Gold emphasize in their widely-cited treatise, "[t]he best-evidence-doctrine regulates the admissibility of evidence only when offered to prove the contents of a writing. . . ."  31 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure, § 7163 (2000) (emphasis added).  As the Advisory Committee pointed out:

> Application of the rule requires a resolution of the question whether contents are sought to be proved.  Thus, an event may be proved by non-documentary evidence, even though a written record of it was made.

Fed. R. Evid. 1002 Advisory Committee's Note.

To state it a little differently:  "[n]o evidentiary rule . . . prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation."  R&R Associates, Inc. v. Visual Scene, Inc., 726 F.2d 36, 38 (1st Cir. 1984).  In short, "any witness with knowledge of facts that exist independent of the contents of a writing . . . may testify without raising an issue under Rule 1002."  Wright & Gold, § 7184.

In this case, the Court anticipates that Defendant will try to prove that the Navy was downsizing, that there was some type of reorganization to accompany such downsizing at Carderock, and that fewer people in the 1102, 1105, and 10106 job categories were being hired.  None of those facts <u>require</u> proof of the actual contents of a writing, even though those may be or may have been documents which would support the testimony of Defendant's witnesses.  This is not a case involving a will, a contract, or a deed -- where each and every word has a significant legal meaning.  Rather, as the Missouri Supreme Court explained in <u>Cooley v. Director of Revenue, State of Missouri</u>, 896 S.W.2d 468, 470 (Mo. App. 1995):

> proof of the mere existence, execution, delivery, or identity of a document is not considered proof of the terms of the document, and may be given without producing the original document or accounting for its absence.  <u>McCormick on Evidence</u>, § 233 (4th ed. 1992); 2 <u>Jones on Evidence</u>, § 7.5 (6th ed. 1972).  Furthermore, the rule does not become applicable simply because evidence is offered of facts which are contained in a writing.  <u>State v. Kirksey</u>, 727 S.W.2d 201, 203 (Mo. App. 1987); <u>Jourdan v. Gilmore</u>, 638 S.W.2d 763, 770 (Mo. App. 1982).  In other words, where the fact to be proved is evidenced in a writing but also exists independently of that writing, then both sources, oral and written, become primary evidence, and the best evidence rule is inapplicable.  <u>State v. Curry</u>, 473 S.W.2d at 748-49. In that regard, the best evidence rule does not exclude evidence based on personal knowledge even if documents or other writings would provide some of the same information.  <u>Aluminum Products Ent. v. Fuhrmann Tooling</u>, 758 S.W.2d 119, 122 (Mo. App. 1988).

For these reasons, the Court concludes that the Best Evidence rule incorporated in Federal Rule of Evidence 1002 is not applicable here and therefore does not preclude admission of oral testimony even though it purports to relate to documents not produced by Defendant (assuming that to be true).  "The best evidence doctrine is inapplicable in these cases because the secondary evidence is offered to prove an event, not the contents of a writing or recording."  Wright & Gold,

§ 7184; see also United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004); Meyers v. United States, 171 F.2d 800, 815-16 (D.C. Cir. 1948); Maier v. Publicker Commercial Alcohol Co., 62 F. Supp. 161, 167 (E.D. Pa. 1945).

            D.    Miscellaneous Issues

        Plaintiff has raised certain miscellaneous evidentiary issues in her voluminous papers.  So that the parties are clear about what they may and may not do at trial, the Court makes the following rulings:

        1.    The Defendant is not barred from introducing testimony of evidence about any efforts made to place Plaintiff in a position as a Labor Relations Specialist working for Diane Truman.

        2.    The Defendant is not barred from introducing testimony that another individual named Scheer accepted a downgrade in order to avoid a RIF.

        3.    The Defendant is not barred from introducing testimony that any actions it took regarding Plaintiff were motivated by a desire not to subject her to what was thought to be an impending RIF.

        All of the testimony identified in paragraphs 1-3 is relevant and probative.

    **III.    Conclusion**

        For all the foregoing reasons, Defendant's Motion to Reinstate the Jury Verdict is **denied**; Plaintiff's Motion in Limine for a Jury Instruction on the Navy's Discovery Abuses and Spoliation of Evidence or, in the Alternative, for Partial Summary Judgment is **denied**; Plaintiff's Motion in Limine to Bar Oral Testimony Not Supported By Documents and Exclude Evidence That is Irrelevant and/or Confusing is **denied**; Defendant's Motion in Limine to Exclude Testimony

Regarding Alleged Spoliation and Discovery Disputes is **granted**; and Defendant's Motion in

Limine to Exclude Argument and Preclude Instruction Regarding an Adverse Inference is **granted**.


December 7, 2005                              /s/_____
                                             Gladys Kessler
                                             United States District Judge


**Copies via ECF to all counsel of record**