UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **LAVONNE JINKS-UMSTEAD,** | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 99-2691 (GK/JMF) |
| **GORDON ENGLAND,** **SECRETARY OF THE NAVY,** | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

This case was referred to me by Judge Kessler for the resolution of discovery disputes. Currently before me is Plaintiff's Motion to Reject Claims of Attorney-Client and Work Product Privileges and Memorandum of Points and Authorities in Support Thereof ("Pl.'s Mot. to Reject Claims of Priv."). For the reasons stated herein, plaintiff's motion will be denied.

**I.      BACKGROUND**

In 1991, Lavonne Jinks-Umstead ("plaintiff") began working for the Department of the Navy ("Navy"). In February 1997, plaintiff was assigned to work at Carderock as a Head Contracting Officer. At some point after her assignment to Carderock, the Navy decided to reduce the number of staff at that office and removed plaintiff's supervisory status. Plaintiff claims that these restructuring decisions were discriminatory and retaliatory, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The Navy maintains that its decisions were based on legitimate business reasons.

The case was tried before a jury from June 23, 2003 through July 1, 2003, which resulted in judgment for the Navy.  However, on February 6, 2004, Judge Kessler granted plaintiff's motion for a new trial on the ground that the Navy did not produce, until the fourth day of trial, highly relevant documents called Work In Progress Reports ("WIP Reports").  The Navy had previously insisted that those documents could not be found or had been destroyed.  On April 15, 2004, Judge Kessler granted plaintiff's motion to conduct limited discovery into the Navy's dilatory production of documents.

Pursuant to Judge Kessler's order for allowing additional discovery, plaintiff served two sets of document requests.  The Navy responded to many of the requests with claims of privilege. Subsequently, pursuant to <u>Plaintiff's Motion to Require the Navy to Prepare a Privilege Log or to Submit to the Court for *In Camera* Review All Documents for Which a Claim of Privilege is Asserted</u>, this magistrate judge ordered that the Navy submit the assertedly privileged documents for *in camera* review.  After reviewing the documents, the court determined that the Navy need not produce any of the documents.  However, because plaintiff had not been provided a copy of the Navy's privilege log, the court decided to allow plaintiff ten days to submit additional arguments based on its review of the privilege log.  Accordingly, on September 14, 2005, plaintiff filed the present motion to reject the Navy's claims of attorney-client and work product privileges.

**II.     DISCUSSION**

Plaintiff argues that (1) certain discovery related drafts are not entitled to work product protection under the crime-fraud exception to the work product doctrine, (2) the court should find that the Navy has waived its privilege claims for the discovery related drafts as a sanction for its

bad faith litigation tactics, (3) an April 19, 2004 e-mail from former Navy counsel Patricia Chalfant to current Navy counsel Cynthia Guill is not attorney-client privileged because Chalfant was not a Navy employee at the time, and (4) a January 27, 2000 memorandum from Chalfant to Patricia Holleran is not protected by the work product doctrine because plaintiff has a substantial need for the memorandum.  For the reasons discussed below, the court disagrees with plaintiff on all four points.

>    A.    **Drafts of the Holleran Declaration, Document Responses, and Interrogatory # 4**

Plaintiff seeks production of three sets of documents that the Navy withheld under claims of the work product privilege: (1) drafts of "the Holleran Declaration"; (2) drafts of the Navy's responses to certain requests for production of documents; and (3) drafts of the Navy's answer to Interrogatory # 4. Pl.'s Mot. to Reject Claims of Priv. at 12-13.  In seeking production of these drafts, plaintiff argues that the drafts fall within the crime-fraud exception to the work product doctrine and that any claim of privilege has been waived because the ultimate versions produced to plaintiff contained material misrepresentations.  At first blush, it appears that plaintiff is making two separate arguments, but upon closer examination, it is apparent that plaintiff is actually attempting to intertwine two distinct legal concepts to reach an outcome that neither will reach independently.  The court will first address why these drafts do not have to be produced under the crime-fraud exception and then why waiver would not be an appropriate sanction in this case.

>    1.    *The Crime-Fraud Exception to the Work Product Doctrine*

The work product doctrine is designed to balance the need of the adversary system to

promote an attorney's preparation against society's general interest in revealing all facts relevant to the resolution of a dispute. In re Sealed Case, 856 F.2d 268, 273 (D.C. Cir. 1988) (citing In re Subpoenas Duces Tecum, 738 F.2d 1367, 1371 (D.C. Cir. 1984)). In furtherance of this principle, Rule 26 of the Federal Rules of Civil Procedure protects from disclosure materials prepared by or for a party, its attorney, or its representative in anticipation of litigation and allows for discovery only upon a showing of substantial need and an inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3).

Work product protection can be overcome by a showing that the client consulted with the attorney in furtherance of a crime or fraud. In re Sealed Case, 107 F.3d 46, 51 (D.C. Cir. 1997) (citing In re Sealed Case, 676 F.2d 793, 811-12 (D.C. Cir. 1982)). In determining whether this exception, known as the crime-fraud exception, applies, courts make a two step inquiry: "First, there must be a prima facie showing of a violation sufficiently serious to defeat the work product privilege. Second, the court must find some valid relationship between the work product [at issue] and the prima facie violation." In re Sealed Case, 676 F.2d at 814-15. The relevant question is: "Did the client consult the lawyer or use the material for the purpose of committing a crime or fraud?" Id.

As plaintiff correctly points out, courts have formulated the crime-fraud exception in broader language than just criminal or fraudulent conduct. Specifically, this circuit has framed the exception as applicable when there is a "crime, fraud, or other type of misconduct that is fundamentally inconsistent with the basic premises of the adversary system." In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985). Most importantly for the present purposes, there is precedent for the extension of the crime-fraud exception to the "employment of services of counsel by

public officials to assist in litigation designed to facilitate unconstitutional racial or ethnic discrimination," Recycling Solutions, Inc. v. District of Columbia, 175 F.R.D. 407, 409 (D.D.C. 1997), and to situations where "the attorney affirmatively participated in a cover-up of sexual harassment activities, or in the reprisal action, or obstructed the discovery process." Coleman v. Am. Broad. Companies, 106 F.R.D. 201, 209 (D.D.C. 1985).

It is plaintiff's burden to make a *prima facie* showing that the Navy engaged in conduct encompassed by the crime-fraud exception. Plaintiff's argument appears to be that the Navy made misrepresentations during the discovery process in an attempt to cover-up its previous discriminatory and retaliatory conduct against plaintiff. Plaintiff has presented no evidence that the Navy's conduct was part of a cover-up – all she has shown is that the Navy made statements in discovery that were incorrect. As plaintiff herself admits, she does not know "whether the [Navy's] misstatements were made intentionally in furtherance of a cover-up of the discrimination and retaliation, or whether the failure to produce the responsive documents requested by plaintiff was merely negligent." Pl.'s Mot. to Reject Claims of Priv. at 8. This court has not found any precedent, nor has plaintiff provided any, that supports the expansion of the crime-fraud exception to errors made during the discovery process. In arguing for the application of the crime-fraud exception, plaintiff appears to have ignored the court's previous words of caution: "[I]f plaintiff claims that defendant has engaged in fraud or bad faith, she must make a *prima facie* showing of defendant's fraud or bad faith. She cannot argue that she needs access to the documents, although they are privileged, in order to make her *prima facie* showing." Memorandum Opinion, 99-cv-2691, Docket Entry 276, at 9 (June 30, 2004). Accordingly, the court finds that the work product status of these Navy drafts remains inviolate.

> *2.     Waiver of Work Product Protection*

Plaintiff also argues that the court should find that the government's claims of privilege "are waived under the circumstances present here where the Navy's tactics raise important and troubling questions regarding the conduct of litigation." Pl.'s Mot. to Reject Claims of Priv. at 9. Specifically, plaintiff asserts the follow evidence of litigation misconduct:

> 1) The production of the WIP Reports at trial demonstrates Holleran's sworn testimony in her January 11, 2002 Declaration was untrue.
>
> 2) In its discovery responses, the Navy represented that all of the documents requested by plaintiff were WIP Reports.
>
> 3) In its discovery responses, the Navy represented that none of the workload documents existed.
>
> 4) In its discovery responses, the Navy represented that no documents were being withheld.
>
> 5) Navy produced documents responsive to plaintiff's requests during trial.
>
> 6) The Navy corrected its earlier Answer to Interrogatory # 4, but still refused to identify all documents not produced.
>
> 7) In her post-trial deposition Holleran identified budget and planning documents that contained the staffing and workload information upon which she allegedly relied on making decisions about Caredock.
>
> 8) On June 6, 2005, the Navy produced hundreds of pages of additional documents, but this response was incomplete.

Pl.'s Mot. to Reject Claims of Priv. at 11-12 (internal citations omitted). The conduct described above shows nothing more than that the Navy's discovery responses were incomplete. This is not new information. The Navy was previously sanctioned for its failure to provide timely and

complete discovery responses when Judge Kessler overturned the judgment in its favor and granted plaintiff's motion for a new trial. It would be inappropriate to sanction the Navy again for the very same conduct. Moreover, plaintiff fails to cite to a single legal authority to support its argument that waiver would be an appropriate sanction in this case. Accordingly, the court finds that it would be inappropriate to further sanction the Navy by finding a waiver of work product protection.

### B.    April 19, 2004 E-Mail From Chalfant to Guill

Plaintiff argues that an April 19, 2004 e-mail from former Navy counsel Patricia Chalfant to Navy counsel Cynthia Guill is not attorney-client privileged because, on the date of the e-mail, Chalfant was no longer a Navy employee. The issue of if and under what circumstances the attorney-client privilege applies to communications from former employees has not been addressed by this circuit. Indeed, plaintiff relies exclusively on secondary sources, cases from other jurisdictions, and a case from this court that applies District of Columbia law. However, because the court has already determined that the e-mail is shielded from discovery by the work product doctrine, see Jinks-Umstead, 231 F.R.D. 13, 15-19 (D.D.C. 2005), and because plaintiff presents no arguments in her moving papers challenging the availability of the work product doctrine to the e-mail, the court sees no need to address the issue of whether the attorney-client privilege applies to communications with former employees. Accordingly, the e-mail does not have to be produced.

### C.    January 27, 2000 Memorandum from Chalfant to Holleran

Plaintiff claims that she can overcome work product protection for a July 27, 2000 memorandum from Chalfant to Holleran based on need. In particular, plaintiff argues that she has

7

a substantial need for the memorandum because it will enable her to determine the precise scope of Holleran's responsibilities in responding to plaintiff's discovery requests.

Work product protection is not absolute. It can be overcome "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Plaintiff has failed to make this required showing. First, she has not shown that she has a substantial need for the memorandum. Plaintiff argues that, because Chalfant and Holleran provided discrepant deposition testimony regarding the scope of Holleran's responsibilities in responding to plaintiff's discovery requests, she needs the memorandum to determine the precise scope of Holleran's responsibilities. While the memorandum may assist plaintiff in piecing together Holleran's role in discovery, mere relevance does not equate with a substantial need. The court's *in camera* review has convinced it that the memorandum would not provide plaintiff with the "precise scope" for which she is looking. As the court previously pointed out when discussing this document, plaintiff can have "no substantial need for these documents because they simply request that the recipient do certain innocuous things to prepare for litigation." Jinks-Umstead, 231 F.R.D. 13, 18 n.2 (D.D.C. 2005). Accordingly, the court finds that plaintiff does not have the required substantial need for Chalfant's memorandum.

Second, even if plaintiff could have demonstrated a substantial need, she has not shown that she would be unable to obtain the substantial equivalent without undue hardship. To the contrary, the information sought was available to plaintiff through other discovery methods, such as interrogatories and depositions – plaintiff even deposed both Chalfant and Holleran on this very

issue. Because plaintiff has already had access to, and has in fact received, information regarding Holleran's role in discovery, plaintiff will not be unduly hindered in the preparation of her case. Accordingly, the court will sustain the Navy's assertion of the attorney-client privilege for the Chalfant memorandum.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to reject the Navy's claims of privilege will be denied. An order accompanies this memorandum opinion.

 _____
 **JOHN M. FACCIOLA**
 **UNITED STATES MAGISTRATE JUDGE**

Dated: